UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMM 2000, LLC d/b/a Comm One Systex of Ohio, LLC, an Illinois limited liability company; and WIRELESS CENTRAL, INC. d/b/a Comm One, an Illinois corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHWESTERN BELL MOBILE SYSTEMS, LLC d/b/a CINGULAR WIRELESS, a successor to SOUTHWESTERN BELL MOBILE SYSTEMS, INC. d/b/a CELLULAR ONE - CHICAGO and AMERITECH WIRELESS COMMUNICATIONS, INC.,<br><br>Defendant. | No. 05 C 457<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

Defendant and Counterplaintiff Cingular Wireless ("Cingular") has moved for summary judgment on all counts of Plaintiff and Counterdefendant Comm One Systex of Ohio, LLC ("Comm One") and Wireless Central, Inc.'s ("Wireless") complaint, which are: (1) breach of contract with Comm One; (2) breach of contract with Wireless; (3) fraud against Comm One; and (4) fraud against Wireless.  Cingular also moves for summary judgment on its counterclaim for breach of contract against both Counterdefendants.  For the following reasons, Cingular's Motion for Summary Judgment is granted.

## II. PRELIMINARY ISSUES

"Local Rule 56.1(a)(3) requires a movant to submit a statement of undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). According to the rule, the statement "shall consist of short numbered paragraphs," each of which specifically refers to affidavits, parts of the record, and other material in support of the fact set forth therein. Local Rule 56.1. Defendant has complied with this requirement.

Local Rule 56.1(b)(3)(B) requires the opposing party to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Pursuant to Rule 56.1(b)(3)(C), the non-movant should also file its own statement of additional facts that require the denial of summary judgment, including references to supporting material. Just as the movant's statement, the non-movant's statement should consist of short numbered paragraphs.

Plaintiffs, in their response, explain that they have objections to Defendant's Local Rule 56.1 Statement of Uncontested Facts, and state that their responses will be addressed separately. However, Plaintiffs include neither their response to Defendant's 56.1 statement, nor a statement of additional facts pursuant to Rule 56.1(b)(3)(C). According to Rule 56.1(b)(3)(C), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

> This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to

> properly respond to a movant's 56.1(a) statement is usually
> summary judgment for the movant (at least if the movant has done
> his or her job correctly) because the movant's factual allegations
> are deemed admitted.

*Malec*, 191 F.R.D. at 583-584. The Seventh Circuit has consistently upheld strict enforcement of Rule 56.1. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Because Plaintiffs have failed to respond to Defendant's 56.1(a) statement of fact, Defendant's factual allegations are deemed admitted.

### III. STATEMENT OF RELEVANT FACTS

Plaintiffs in this case are companies that were authorized sales agents of Defendant Cingular, a cellular phone company. Prior to 2000, Plaintiff Wireless owned and operated stores primarily in Illinois and the Gary, Indiana area, and was an exclusive reseller of Cingular phones and service. The stores purchased equipment from Cingular in order to perform their obligations. These purchases were governed by an Equipment Distribution Agreement. In late 1999, Edward Garcia, president of Wireless, began discussions with Cingular with an aim to expand operations to Ohio. It was Cingular's understanding that Garcia would merge his Illinois entities into a newly incorporated entity, Comm 2000, and that a Regional Agreement for Illinois and Ohio would be entered into by Comm 2000.

On May 31, 2000, Garcia, on behalf of Comm 2000, executed a Cellular Service Sales Agreement with Cingular ("the Cleveland Agreement"), as well as an Equipment Distribution Agreement. The Cleveland Agreement allowed Cingular to freely compete with the agent. Cingular could sell wireless service "directly, or indirectly, by any means, throughout the service area." Another provision allowed Cingular to offset or deduct all amounts owed to it by the

agent from any amounts it owed to the agent. The off-setting provision applies to amounts accrued pursuant to any agreement between the agent and Cingular, including Equipment Distribution Agreements. The Equipment Agreement itself contained a similar off-setting provision, and Cingular also reserved the right to require payment in advance or cash on delivery. Both the Cleveland Agreement and Equipment Agreement contained an integration clause stating that it set forth the entire relationship between the parties and could be modified only by writing signed by both parties.

In February of 2002, Garcia's operations in Ohio took a turn for the worse. As a result, he executed a personal guarantee and promissory note in the amount of $400,000 to further secure Comm One's equipment balance. Over time, the debt to Cingular grew, and at one point Comm One owed Cingular $763,000 for equipment. In response, Cingular informed Garcia that it was exercising its offset rights in accordance with the agreements, and that equipment purchases were to be made in cash. In February 2003, Cingular terminated the Cleveland Agreement. Comm One's balance at that time was unpaid. Since May 2004, Comm One's outstanding balance for equipment has been $404,718.64 plus interest, fees and costs.

In September of 2001, Garcia sold some of his Illinois stores to Cingular, and retained five stores. The Asset Purchase Agreement reaffirmed the Illinois Sales Agreement with respect to the five retained locations. The Illinois Agreement expressly allows for Cingular to compete "in the same geographical areas served by agent," and also contains an off-setting provision with regard to any past due amount owed to Cingular by the agent. It also contains a one-year limitation clause, requiring any action brought under the contract to be brought within one year after the underlying cause of action accrues.

On December 20, 2004, Garcia filed his original complaint in the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois, and it was removed to this court on January 26, 2005. Subsequently some of Plaintiffs' original claims were dismissed, and a counterclaim and second amended complaint were filed. In that complaint, Garcia alleges, among other things, that Cingular breached its agreements by failing to account for new activations in its database, failing to load new customers into its database, incorrectly charging Plaintiffs for cancelled contracts, wrongfully deleting customers from the database, incorrectly calculating advertising money owed to Plaintiffs, reducing residual payments owed to Plaintiffs, and delaying payments of rebates, commissions and other monies owed to Plaintiffs. Furthermore, Plaintiffs allege that Cingular opened its own stores less than two miles from Plaintiffs' Ohio locations, in violation of a proximity restriction represented to Plaintiffs by Cingular's officers and employees. Plaintiffs next allege that Cingular breached its agreement with Wireless by, among other things, putting it on a cash advance purchase basis due to the financial problems of Comm One, which Plaintiffs claim is a completely separate entity. Plaintiffs' fraud counts accuse Cingular of making false promises regarding, among other things, enhanced residual payment, 3-mile geographic exclusivity, and reduced equipment and service pricing from Cingular. After the amended complaint was filed, discovery began. It was extended several times and finally set to close on September 8, 2008 for fact discovery and October 27, 2008 for expert discovery.

On June 16, 2008, Cingular served each Plaintiff with notices of 30(b)(6) depositions, setting the Plaintiffs' representatives' depositions for July 15 and 16, 2008. The notice sought testimony regarding "claims for payment from Cingular for which you contend payment is owed

5

under the parties' agreements, including but not limited to claims for reimbursement and damages allegedly suffered as a result of the claims asserted in the amended complaint."

On July 1, Comm One's attorney notified Defense counsel that she would have to reschedule, but failed to offer alternative dates. On July 8, Cingular requested new dates, and was told in response that Plaintiffs were not prepared to produce the witnesses. On August 29, Cingular e-mailed Plaintiffs' attorney about rescheduling the depositions. No response came until September 5, when Plaintiffs' counsel confirmed by e-mail her agreement to comply with the 30(b)(6) notices. The September 8 discovery cut off came and went without production of Plaintiffs' witnesses for deposition. From September 9 through October 27, Comm One produced no witnesses or expert reports. On October 28, Plaintiffs filed a motion to extend discovery, which I denied.

Defendant now moves for summary judgment on both Plaintiffs' claims and its counterclaims. Defendant argues (1) Plaintiff Wireless' breach of contract and fraud are barred by the contractual one-year limitation; and (2) Plaintiff Comm One's breach of contract and fraud claims are not supported by the evidence, and Plaintiffs' failure to appear for the noticed 30(b)(6) depositions should bar them from providing evidence with regard to the matters identified in the notice. For the following reasons, Defendant's motion for summary judgment is granted.

## IV. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## V. DISCUSSION

### A. Defendant's Counterclaim

Plaintiffs argue that summary judgment must be denied with respect to Defendant's counterclaim because issues of fact remain as to whether Comm One's obligation to pay the equipment balance was excused by Cingular's material breaches of the agreements. Plaintiffs do not contest Defendant's allegations of breach of the equipment agreement, but maintain only that

7

the breach of that agreement should be excused due to Cingular's breach of the Illinois and Cleveland Agreements. Plaintiffs rely on *Chapman v. VLM Entertainment Group, Inc.*, No. 00 C 7791, 2002 WL 1610970 (N.D. Ill. 2002). In that case, the plaintiff, a former corporate officer and shareholder, brought a breach of contract claim against the corporation VLM alleging that VLM failed to pay him amounts due under the Share Purchase Agreement executed as part of Chapman's sale of his corporate interest. *Id.* at *1-*2. VLM claimed that Chapman breached a non-competition agreement, also executed as part of the sale, and that this breach excused VLM's obligation to pay under the purchase agreement. *Id.* The court noted that "a 'material breach of a contract provision by one party will justify non-performance by the other party." *Id.* at *4 (citing *Sahadi v. Continental Illinois National Bank and Trust Company of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983)). This rule of contract law is typically invoked when a non-breaching party to a contract seeks to be excused from his duties under that contract because another party breached the same agreement. However, in VLM, because "the parties genuinely dispute[d] the relationship between the various agreements," the court could not determine as a matter of law "whether a material breach of one Agreement would excuse performance for all." *Id.* at *5.

Plaintiffs do not exactly argue that the agreements were related or should be taken together, but they do suggest such an argument. They are citing a document with the heading "Disappointments," which states that incorrect commissions and rebate payments, presumably by Cingular, "disrupted distribution . . . and left agents unable to make payments on equipment balances." Plaintiffs' reliance on this document is problematic. On a motion for summary judgment, "although the evidence supporting a factual contention need not be admissible itself, it

8

must represent admissible evidence." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). "To be admissible [on a motion for summary judgment], documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2722 (3d ed. 1998). This exhibit is not authenticated in any way and does not represent admissible evidence. *Macklin v. Butler*, 553 F.2d 525, 528 & n.1 (7th Cir. 1977) (an unsworn memorandum in support of a motion for summary judgment, with twelve exhibits attached "did not meet the requisites of [Federal Rule of Civil Procedure] 56(e)" and could not be properly relied upon by the district court). This is true of twenty-one exhibits submitted by Plaintiffs.[1] Because they do not meet the requisites of Rule 56(e), they are not properly before the court and cannot be considered here. Without these exhibits, there is no supporting evidence for any argument that the agreements are somehow related or dependent upon one another. For this reason, Defendant is entitled to summary judgment on its counterclaim.

**B. Plaintiffs' Claims**

One argument that could potentially survive Plaintiffs' failure to file a 56.1 statement and failure to properly introduce their exhibits is that Defendants breached the covenant of good faith and fair dealing. "Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith

---

[1] This includes the letter supposedly from Cingular which states the company's distribution policy and explains that it "may approve additional; new distribution points, if there is no other Authorized Sales and Service Center within a radius of three miles."

to one of the parties and the other does not, the latter construction should be adopted."

*Martindell v. Lake Shore Nat. Bank*, 154 N.E.2d 683, 690 (Ill. 1958).

> Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.

*Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 161-62 (Ill. App. 2007). "Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Id.* at 161.[2]

Even this argument, however, fails. Plaintiffs have failed to provide any evidence of damages resulting from the alleged breach. "In order to plead a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (2004). "Therefore, under Illinois law, it is necessary to show damages-not the specific amount, but rather that the plaintiff did, in fact, suffer some damages." *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). In this case, Plaintiffs point to no admissible evidence of damages.

Plaintiffs' fraud claims also fail for the same reasons.

---

[2] Although not binding, the court in *Photovest Corporation v. Fotomat Corporation*, 606 F.2d 704, 727-28 (7th Cir. 1979) applied this theory in a somewhat similar situation. Applying California law, the Court found that where a franchisor saturated franchisee's market with company-owned stores, franchisor breached an implied covenant of good faith and fair dealing.

> Under Illinois law, to establish actionable fraud, a plaintiff must prove that defendants, with the intent to induce plaintiffs to act, made a false statement of material fact which defendants knew or believed to be false. Plaintiffs must also show they justifiably relied on the statement and suffered damages resulting from that reliance. Most importantly, fraud must be proved by clear and convincing evidence.

*Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 852 (7th Cir. 2007) (citing *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E.2d 613, 619 (Ill. App. 1995) (quotations omitted). Plaintiffs point to no admissible evidence of misrepresentations or to any evidence of damages at all. For these reasons, Defendant is entitled to summary judgment on Plaintiffs' claims of breach of contract and fraud.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

ENTER:

/s/ James B. Zagel
James B. Zagel
United States District Judge

DATE: June 29, 2009